May it please the Court, I am Neal Kimmelfield for Appellant Metro One, which I will refer generally to as Metro just for simplicity. I'd like to reserve two minutes for rebuttal, if I may. How many? Two minutes. Two minutes. Thank you. Your Honors, there are three things going on in this case. One is the government's constant emphasis on what the word carryovers nearly always means in common usage and in the Internal Revenue Code. The second is a number of competing canons of construction which have been cited with appropriate references to Supreme Court and Circuit Court opinions in the briefs. And the third is discerning Congress's purpose in enacting the relief quest the relief role in question. And if I may, I would like to comment briefly on each of these. I'll take no more than a minute or two before going forward with your questions. The first is the emphasis on the common usage of the term carryovers. What I would like to point out is that there are, first, there are words in the English language that often mean one thing but sometimes mean another. One example is the word men, which is mostly used to refer to males, but sometimes about males and females, and the intended usage is discerned from the context. The second comment I'd like to make about this is the government's, I would say, attempt to characterize our usage of the word carryovers as nonstandard. And one example of this is footnote 5 in the government's reply brief, which the government characterizes our phrase, carryover years, which was simply used as a defined term for convenience as representing a departure from standard usage. And we did not refer to this in our reply brief, but I would like to point out now that there are including the Supreme Court, which in the Foster-Lumber case in 1976 used the phrase carryover years three times to refer to a net operating loss carryback. So what you're really saying is the Supreme Court, as I understand it, established the relative weight we should give and says we start with the plain meaning and we end there. Is that what you're saying? No, Your Honor, at least not in the context of this case. Well, I guess that's why I have a little worry in this case. It seems to me that if we start with the plain meaning of the words and we read them pretty plain, even if we go to the dictionaries and the case law as to what they suggest, it just means carryovers mean carryforwards. A couple of comments about that, and I believe I discussed this in the reply brief. The dictionary, I think, is a two things. One is it is a perilous source of information about what technical terms mean. And I believe there is case law saying that dictionary definitions should not be relied upon when defining when, for purposes of the law, defining technical terms, as I believe the term carryovers is here. Well, technical terms usually mean a term that's used more precisely. But you've already acknowledged that mostly in the statutes when the term is used, it means carryforward. So you're telling us you shouldn't rely on all the other statutes and you shouldn't be reaching for what it is we should rely on. The what we should be relying on here is the two things. One, the I hope it's an acknowledged fact that the term is occasionally used to mean carryovers and carrybacks and carryforward. But that doesn't really help very much. Sometimes it might be used that way. It doesn't tell us that in this instance it should just because it's convenient for your client to have it play out that way. I mean, usually it's used in another fashion. And the dictionary suggests that usually outside of the technical context, it's used in another fashion. So why should we reach out and pick out the obscure definition or the less likely definition in this context? There are two reasons, one which is a historical reason that relates to canons of construction. The other, which I think is much more important here, is the consequences for the application of the relief rule if the narrow definition is adopted versus the broader definition that we advocate. As we pointed out in the examples in the briefs, if the narrow definition is adopted, the consequences are somewhat haphazard and relief is not provided in a number of instances where the very meager legislative history indicates that Congress intended relief to be provided. And just to put that in some context, this the original relief rule in the 2002 Jobs Act was adopted in March of 2002. The rule that we are discussing having to do with carryovers to taxable years ending in 2001 and 2002 would foreclose operation of the carryover rule to any taxable year, excuse me, to any fiscal year taxpayer whose year had begun in February of 2002 and would therefore end in January 2003. Well, if we look at the text of this first version, it seems clear to me Congress did not apply the relief rule to the NOLs that were carried back to 2001 and 2002. And the ---- I mean, Section 56D1A2I. I hate to get into this stuff, especially for me from Idaho, but that's pretty clear it wasn't supposed to apply to carrybacks, the original version of the relief rule. The literal language that was adopted in 2002 referred only to carry-forwards, and the question becomes when that was changed in 2004 to carry-overs. Okay. So if we go to 2004, the committee report indicated the change was only clerical, didn't it? The committee report referred very briefly to all ---- Would you answer my question? Didn't the committee report indicate right there, I mean, I read it, so I was looking very carefully to figure out if I could go along with you, and it says this change is only clerical. Now, if I see a clerical change, why should I decide that Congress intended a clerical change to alter the economic effect of the original version of the statute? Why should I? So there are two comments about that. One is, what does the word clerical mean in that context, and does the term clerical encompass something like what was done in these minimum tax changes? In general, and I wish you'd answer my question, in general, when I read clerical, it means we're not trying to change what we're doing. We're just messing around with the language to make it more clear. So, again, I'm not understanding why when it's only clerical, all of a sudden you're trying to alter the economic effect of what the original version did. What do I have to get to there? What reason should I use? Your Honor, I'd like to provide a little bit of context to the term clerical in that committee report. The 2004 Act, in Section 403, which contained the changes, the technical corrections to the 2002 Act, Section 408 of the 2004 Act included what were classified as technical amendments. Excuse me, clerical amendments. There were 20, I believe, 22 clerical amendments to the tax provisions in the 2002 Act, doing things like inserting closed parentheses, correcting number changes, fixing punctuation, and the like. The minimum tax changes were included in the general technical corrections section, and the committee report, in a very cryptic line in passing, said the bill also, or the Act also makes clerical changes to the alternative minimum tax. The changes that were made included the deletion of a phrase that if the government were correct, that the word carryover means carryforwards actually had substantive effect. And so there's, in some sense, the argument about clerical changes is the I would characterize it as the government trying to have it both ways. One is that the word carryover always means carryforward, because that's the common usage. But if that was the case, then in the phrase that was deleted in 2004, the deleted phrase referred only to carryforwards. If that was so, then the deletion had a significant substantive effect and could not have been merely clerical. All right. Let me ask you another question, which is pretty difficult for me to determine. Why can't I assume that the carryovers in section 56 means the same thing that it does in 172B1A? Section 56 uses the term carryovers to describe a component of the net operating loss deduction computed under section 172. The reason is that the rule that we are talking about here is a relief rule that simply describes an amount. It does not use the term carryovers in the sense that the tax court opinion suggests, which is using it to refer to something that will be carried somewhere, the function of section 56D1A2I is simply to compute an amount of limitation. And in there is nothing inconsistent with using the general term carryover to refer to all losses that are carrying to the year in question simply for purposes of calculating the amount. The question? Okay. I just wanted your best explanation of me. I'm not sure I swallow it, but at least I've heard it. The -- I would like to call your attention to the Benton case, which was discussed in the briefs, and answer any questions you have about that. In the Benton case, we had a situation that was virtually identical to what we have here in that there is a provision in a statutory provision, section 1398, that referred to net operating loss carryovers under section 172. And in that situation, a bankruptcy estate had a loss-recognition event upon its net operating losses, and when the bankruptcy estate terminated under section 1398I, the debtor inherited those losses. And the question before the Court was whether the debtor who inherited those losses in 1997 could carry them back to 1995 and 1996 when the government was arguing that net operating loss carryovers under section 172 can only be carried forward. And the Court held that because of a desire to effectuate the purposes of section 1398, which was to take two parallel taxpayers, one the estate and the other the debtor, and once the creditors were protected through the preservation of all assets during the pendency of the bankruptcy, to merge them back together and allow the creating a detriment for the estate. Kennedy, that was the tax court. Kennedy, right. Same one that interpreted it here, right? Correct. Differently. Differently, and without referring to the Benton decision. Well, I understand, because they had a different provision under the code in that particular provision than what they had in this particular provision, and a different history and a different basis. And my hope is that as the tax court identified and discussed the tax policy involved in interpreting the word carryover in that context, although the tax court failed to do so here, this Court will do that. I understand your argument. Thank you. Thank you, Mr. Kimmelfield. You have about a half a minute left. Good morning. Good morning, Your Honor. My name is Bethany Hauser for the Commissioner of Internal Revenue. The Commissioner's position in this case is very straightforward. It's simply that the word carryover in Section 5061 has the same meaning given to that term in Section 172b1a. This Court has already held in the Cadillac case that the formula for determining that operating loss deductions in Section 172 has been integrated into 56d1. And obviously, the terms carryover and carryback are important parts of the net formula for determining net operating losses in Section 172. So we believe they've also been incorporated into Section 56d1. In fact, Metro also agrees that it is allowed to take a carryback within the meaning of Section 56d1 to carry its alternative tax net operating losses from 2003 and 2004 back to 2002. And for purposes of 172, as incorporated in 56d1, it agrees that that is a carryback. But Metro is arguing that that same amount carried back from 2003 and 2004, those same amounts should be carryovers for purposes of this other part of Section 56d1. That is extremely similar to the argument that the taxpayer made in the Sorensen case. It's structurally similar to the argument the taxpayer made in the Sorensen case, where the taxpayer argued unsuccessfully to this Court and to the Supreme Court that an earned income tax credit could be an overpayment for part of the refund statute, but not an overpayment for purposes of another part of the refund statute. And the Supreme Court explained that it presumes that when Congress uses the same term in two different parts of a closely related tax statute, it presumes that Congress means the term to have the same meaning in both places. And in Sorensen, that presumption was strengthened by the fact that there was a part of the statute expressly stated that the earned income tax credit shall be an overpayment. The Supreme Court in Sorensen called that an express definition, and we have that same shall be construction in Section 172b1a here, which provides that amounts carried over shall be carryovers, and amounts carried back shall be carrybacks. So what do I do with the case that counsel just cited to me from the tax court? The Benton case, as we explained in our brief, should be confined to the bankruptcy context. The word carryover in the issue in Benton appears in Section 1398G, which governs the assumption of tax attributes by the bankruptcy estate at the beginning of the bankruptcy provision. But Benton was actually about Section 1398I, which governs the transfer of a similar list of tax attributes back to the debtor at the end of the bankruptcy proceeding. And instead of listing all or repeating the list in 1398I, the statute simply says that appropriate adjustments should be made to recognize the fact that this is the transfer back to the debtor at the end of the bankruptcy instead of the transfer to the estate at the beginning of the bankruptcy. As we explained in our brief, because time only moves in one direction, there can be no postpetition carrybacks at the beginning of a bankruptcy, because there have been no postpetition time period at the beginning of a bankruptcy. On the other hand, at the end of a bankruptcy, there has been a postpetition time period. So and in the Benton case and other bankruptcy cases last for more than two tax years, there could be a so that it would be possible to carry back a postpetition loss to another earlier postpetition period. And that was the situation the tax court was dealing with in Benton. It was interpreting the word carryover through this prism of 1398I. And the whole thing is involved in the specifics of the way bankruptcy works between the intersection of bankruptcy law and tax law. We think the Benton case should be confined to that case, which it appears the tax court did here, too, since that bankruptcy the Benton case is a tax court case, and the tax court did not here find that persuasive. The taxpayer metro here has also relied on the 2002 version of 56D1, which is a little bit audacious, considering that under the 2002 version of 56D1, it clearly is a little bit more persuasive, and the tax court, obviously, would not be allowed to get to take this to take these deductions in excess of the 90 percent limitation. The amendment in 2004 was made effective as if enacted with the original version. Congress called it a clerical amendment. The tax court, in its opinion, suggested that in changing the words over, carryover, carryforward, carryback, and adjusting those words in the 2004 amendment, Congress was simply bringing its usage in 5061 into conformity with the way it uses the same terms in Section 172. In other words, it was essentially correcting a mistake, much like putting in a closed paren that's been forgotten. Alitoso, what exactly was the mistake? What would have been wrong with not the result of this case been any different if the statute hadn't been changed? Well, no, because as I just pointed out, the 2002 version clearly indicates that a carryback from 2003 or 2004 to 2002 would not be taken. Which is why it's hard for me to understand there's a mistake or a need for a change if, in fact, there's no change. Well, I'm going to say the meaning doesn't change, and it seems odd to go to a more arguably more ambiguous word and call that a clerical correction. Well, in the original version of 56, the 2002 version of 56d-1 referred to carrybacks. So why would you change that to a term that was less specific? Because it refers to carrybacks and carryforwards because the closely related Section 172 refers to carrybacks and carryovers. And so it was introducing an inconsistency in the language between those two closely related sections. So in order to eliminate the inconsistency in the language between those two closely related sections, it -- Congress would have changed the word carryforward to the word carryover, two words that are very frequently understood to be synonyms, but providing more consistency in terminology throughout these closely related sections. I'd just like to make one other point. Metro has spoken about the strange results that would obtain under the government's interpretation. I would also like to point out a very strange result that would obtain under Metro's interpretation of the statute. Under their interpretation of the statute, a taxpayer that has alternative minimum taxable income in 2002 and an alternative tax net operating loss in 2003 can carry back the alternative tax net operating loss from 2003 to 2002, and that carryback will not be subject to the 90 percent limitation. That's their interpretation of the statute. But the same under the plain terms of the statute, if the taxes are simply reversed so that the taxpayer has an alternative tax net operating loss in 2002 and alternative minimum taxable income in 2003, there -- it will not be possible, and that taxpayer carries the alternative tax net operating loss forward from 2002 to 2003, that carryforward will be subject to the 90 percent limitation. That result is at least as unpleasing as any of the results the taxpayer has pointed to in its brief. And so we think that the straightforward interpretation, which is that the word carryover in 5061 should have the same meaning that's been given in the very closely related statute, Section 172, should govern here as the tax court held. Thank you. Roberts. Thank you, Ms. Houser. Mr. Kimmelfield, I think you can carry over about 30 seconds. Kimmelfield. I don't think I'll need 38 seconds. The Metro identified a number of situations where there would be anomalies under the government's interpretation. The only anomaly that the government has now identified under Metro's interpretation is one that involves a company that did better in a later year, and to say that that is anomalous is inconsistent with the notion that the purpose of Congress was to help struggling business. Roberts. Thank you, Mr. Kimmelfield. Ms. Houser. Thank you, too. The case just argued is submitted. Good morning. The last case today is 11-35184 and 35776, the United States v. the State of Oregon.
judges: Silverman, Clifton, Smith